UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VAN NU TU TRUONG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-316 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| UNITED STATES CITIZENSHIP | : | | |
| AND IMMIGRATION SERVICES, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

DENYING PLAINTIFF'S MOTION FOR DISCOVERY

### I.  INTRODUCTION

In this case, Plaintiff Van Nu Tu Truong challenges an administrative denial of her petition for a visa.  Currently before the Court is Plaintiff's request to take discovery.  Plaintiff acknowledges that discovery is not normally appropriate in Administrative Procedure Act ("APA") cases, but argues that one of her claims—that United States Citizenship and Immigration Services ("USCIS") impermissibly applied a new policy to her case retroactively— does not rely on the APA.  She is wrong about that, and does not argue that any exception to the APA "record rule" applies.  Therefore, the Court denies the motion for discovery.  But it does so without prejudice to Plaintiff bringing a new motion for discovery that draws upon the correct legal framework.

### II.  BACKGROUND

The EB-5 Immigrant Investor Program offers permanent residency visas to individuals who invest qualifying sums in qualifying businesses in the United States.  Compl. ¶ 1; *see* 8 U.S.C. § 1153 (b)(5); EB-5 Reform and Integrity Act of 2022, Section 103(b)(1), Pub. L. No.

117-103, 136 Stat. 49, 1075.  Plaintiff Van Nu Tu Truong, a resident of Vietnam, obtained a qualifying amount under the relevant regulations—as applicable to her investment, $500,000—from selling property and by way of "a cash gift from her in-laws."  Compl. ¶¶ 2, 12, 29.  She planned to invest in a qualifying busines entity, CMB Georgia Infrastructure Investment Group 51, LP, which was raising funds to build a lodge in LaGrange, Georgia.  *Id.* ¶ 28.  But Vietnamese law restricts the conversion of Vietnamese currency, so Plaintiff engaged in a common practice for EB-5 immigrants from countries with conversion restriction laws: she engaged in a currency swap.  *Id.* ¶ 30; *see id.* ¶ 21.  Specifically, she transferred about $550,000 in Vietnamese currency to a Vietnam-based affiliate of a Singaporean company, VNT Trading and Investment, Pte.  Then, VNT Trading transferred $550,000 from its Singapore bank account to the Georgia investment entity.  *Id.* at 30.

The investment taken care of, Plaintiff filed an I-526 petition for an EB-5 visa with USCIS in December 2016.  *Id.* ¶ 31.  Mindful of the admonition of 8 C.F.R. § 204.6(e) that "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital" that qualifies as an EB-5 investment, she included documentation of the sources of her invested funds: letters confirming her earnings, property sale documents, gift contracts, and papers documenting the transfer of funds from Plaintiff through VNT Trading.  Compl. ¶¶ 13, 32.  USCIS responded with a request for evidence that VNT Trading had converted and transferred the funds lawfully.  *Id.* ¶ 33.  In response, Plaintiff provided evidence including "a certificate from Singapore's Accounting and Corporate Regulatory Authority[] documenting VNT Trading as a registered Singaporean company, as well as bank statements showing the transfer of funds from VNT Trading's account to Ms. Truong's new commercial enterprise in the United States."  *Id.* ¶ 34.  Some back-and-forth with the agency in November

2018 resulted in Plaintiff's submission of further evidence including "a declaration from VNT Trading's Deputy Director addressing the company's operations, its receipt of [Plaintiff's] money, and its transfer of funds to the United States on [Plaintiff's] behalf; bank statements from VNT Trading to corroborate the capital transfer; evidence of VNT Trading's lawful operations in Singapore; a wire-transfer confirmation showing that [Plaintiff's] capital was fully funded into her U.S. new commercial enterprise; and a legal opinion from a Vietnamese attorney confirming that the currency swap was lawful under Vietnamese law." *Id.* ¶¶ 35–37. But in March 2019, USCIS denied Plaintiff's petition "based . . . on perceived evidentiary gaps regarding the currency swap." *Id.* ¶¶ at 38–39. Plaintiff appealed the denial administratively, *id.* ¶ 40, but the USCIS Administrative Appeals Office ("AAO") held that "further evidence on the swap was 'necessary . . . to establish the lawful source of the funds invested in the [new commercial enterprise].'" *Id.* ¶ 42.

According to Plaintiff, when she filed her I-526 petition in 2016, "USCIS maintained a policy and practice of accepting currency swaps without requiring source-of-funds evidence for the entities that perform them." *Id.* ¶ 23. This "policy and practice shifted abruptly at the start of 2017," when USCS "[f]or the first time . . . invoked 8 C.F.R. § 204.6(e) to question not only the *investors'* lawful acquisition of assets, but also" to require "details on the companies that transfer and exchange funds using currency swaps." *Id.* ¶ 25 (emphasis in original). Plaintiff alleges that "this sea change in the agency's adjudicatory practice was prompted by an internal directive by the Immigrant Investor Program Office and USCIS Headquarters to change the agency's practice and policy in cases involving currency swaps and currency exchanges." *Id.* ¶ 26.

Plaintiff filed suit against USCIS and two of its officials (together, "Defendants"), asking this Court to declare USCIS's denial unlawful and to order USCIS to withdraw the denial and

either approve or reassess her I-526 petition. Compl. at 17. She styled her Complaint to include three counts. Count I asserts that the denial must be set aside under the APA, 5 U.S.C. §§ 706(2)(A), (D), because it was arbitrary and capricious, issued without observance of required procedures, and unsupported by substantial evidence. *Id.* ¶¶ 50–59. Count II is labeled "Impermissible Retroactive Application of Agency Practice." Compl. at 14. It asserts that USCIS's retroactive application of "its new policy and practice on currency swaps" was inequitable under *Retail, Wholesale & Dep't Store Union, AFL-CIO v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972). *Id.* ¶¶ 60–68. Finally, Count III alleges that "USCIS's rule requiring investors to present lawful-source-of-funds evidence for third parties assisting them with currency swaps is a substantive rule of general applicability that carries the force of law" and therefore violates the APA's requirement that such rules be promulgated after notice and public comment, 5 U.S.C. § 553 *et seq*. *Id.* ¶¶ 69–72.

   The Court now addresses Plaintiff's Motion for Leave to Propound Limited Discovery, ECF No. 9, in which Plaintiff seeks leave to conduct discovery in support of her retroactivity claim. Specifically, Plaintiff wishes to issue "requests for production of prior agency adjudications of EB-5 visa petitions (including approvals) issued in cases involving currency swaps both prior to the filing of Plaintiff's I-526 petition and while the petition was pending, as well as internal agency guidance (including instructions, memoranda, orders, e-mails, and policy directives of supervisory personnel) regarding currency-swap transactions issued prior to the filing of Plaintiff's I-526 petition and while Plaintiff's petition was pending." Pl.'s Statement of P. & A. Supp. Mot. for Leave to Propound Limited Disc. ("P. & A.") at 16–17, ECF No. 9. Defendants oppose the motion. Defs.' Opp'n Pl.'s Mot. Leave for Disc. ("Opp'n"), ECF No. 11.

### III.  ANALYSIS

The standard governing Plaintiff's discovery request depends upon the nature of her claims.  Plaintiff expressly relies on the APA for Counts I and III, and accordingly does not dispute that these claims are subject to the record rule, which generally prohibits the introduction of evidence outside the administrative record in APA actions: "[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision."  *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (cleaned up).  Plaintiff premises her argument that she is nonetheless entitled to take discovery on the assertion that Count II, her "retroactivity claim[,] is not brought under the APA's provision for substantive review and therefore is not subject to the APA's 'record rule.'"  P. & A. at 8.  Plaintiff does not ground her retroactivity claim in the Constitution; rather, she characterizes it as "a non-statutory cause of action" that "invok[es] the Court's equitable power."  *Id*. at 11 (citing *Retail, Wholesale & Dep't Store Union, AFL-CIO v. N. L. R. B.*, 466 F.2d 380, 390 (D.C. Cir. 1972).  In *Retail, Wholesale*, the D.C. Circuit held that whether an agency may retroactively apply a new rule against a party to an adjudication depends on the consideration of equitable factors, including:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Id.*

The *Retail, Wholesale* panel did not clearly identify the source of this standard, and courts evaluating *Retail, Wholesale* claims often do not identify their precise legal nature.  However, the D.C. Circuit has made clear that a *Retail, Wholesale* claim is "ultimately . . .

5

founded upon the requirement of the [APA] that agency action not be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Cassell v. FCC*, 154 F.3d 478, 483 n.4 (D.C. Cir. 1998) (quoting 5 U.S.C. § 706(2)(A)); *see Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 745–46 (D.C. Cir. 1986); *Chiayu Chang v. United States Citizenship & Immigr. Servs.*, 254 F. Supp. 3d 160, 163 (D.D.C. 2017).  Therefore, Count II's retroactivity claim arises under the APA and is subject to the record rule.[1]

Plaintiff's mischaracterization of her retroactivity claim as a non-APA claim causes her to miss the opportunity to argue that one of the exceptions to the APA record rule should apply. *See CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (noting that "narrow" exceptions to the record rule may exist when "the procedural validity of the agency's action remains in serious question . . . or the agency affirmatively excluded relevant evidence" from the administrative record (cleaned up)).  She does argue briefly in a footnote that the record rule admits of an exception when a party seeks discovery "of an agency's contemporaneous construction of relevant regulations." P. & A. at 14 n.3 (quoting Richard McMillan, Jr. & Todd D. Peterson, *The Permissible Scope of Hearings, Discovery, and Additional Factfinding During Judicial Review of Informal Agency Action*, 1982 Duke L.J. 333, 373 (1982)).  To support the existence of this exception, Plaintiff cites only a 1982 law review article that discussed discovery in the context of determining whether an agency interpretation was subject to deference under the framework that existed before *Chevron*, and a 1987 district court case that did not cite or discuss the APA's record rule.  *Id.* (citing McMillan & Peterson, *The Permissible Scope of Hearings, Discovery,*

---

[1] Plaintiffs' argument to the contrary relies heavily on *Carlsson v. U.S. Citizenship & Immigr. Servs.*, No. 12-CV-07893, 2015 WL 1467174, at *12 (C.D. Cal. Mar. 23, 2015), but the court in that case, without explanation, treated the plaintiff's retroactivity challenge to a visa denial as an "independent claim" rather than an APA claim, *id*. at 9.  Therefore, *Carlsson* is not persuasive.

*and Additional Factfinding During Judicial Review of Informal Agency Action*, *supra*, at 373–75 and *United States v. Exxon Corp.*, 87 F.R.D. 624, 633 (D.D.C. 1980)). Other courts in the D.C. Circuit have not recognized this exception to the record rule; indeed, the D.C. Circuit's general trend has been toward narrowing the range of exceptions to the record rule. *See United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (collecting cases).

      To be sure, there is some intuitive appeal to Plaintiff's argument that she needs discovery to determine whether or not USCIS in fact applied a new policy to her case and, if so, whether the *Retail, Wholesale* factors would render any such application inequitable. Her case *might*, for example, fit into the exception to the record rule for cases in which "the district court cannot determine from the administrative record whether the agency complied with its procedural obligations." *United Student Aid Funds*, 237 F. Supp. 3d at 4 (citing *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989); *CTS Corp*, 759 F.3d at 64); *see also City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (suggesting that a party may supplement the administrative when "background information [is] needed to determine whether the agency considered all the relevant factors" (cleaned up)). The court in *United Student Aid Funds* held that this exception applied to a case that required the determination of whether a Department of Education Dear Colleague Letter announced a "new rule," because the administrative record was "silent about the existing industry practice at the time DOE issued its Letter." 237 F. Supp. 3d 1, 4–6. Similarly, the court in *American Bar Association v. United States Department of Education* permitted extra-record evidence under this exception in support of the plaintiffs' argument that the Department of Education had applied a changed interpretation of a regulation to deny them eligibility to participate in a loan forgiveness program. 370 F. Supp. 3d 1, 26, 37–38 (D.D.C. 2019). Somewhat similarly, Plaintiff says that the administrative record in this case does not by itself

7

establish, and that she therefore needs to discovery to show, that USCIS's treatment of her petition "represent[ed] an abrupt departure from well-established practice."  P. & A. at 15 (quoting *Retail, Wholesale*, 466 F.2d at 390).

But Plaintiff has not presented the argument that this posture makes any record-rule exception applicable; rather, she has largely rested on her incorrect assumption that her retroactivity claim is not an APA claim at all.  The Court will not *sua sponte* examine whether any record-rule exception applies.  The administrative record has not yet been filed, and the parties' sparse citations to it do not resolve whether the record is sufficient to facilitate adjudication of Plaintiffs' retroactivity claim.  Nor do the public adjudications Defendants collect necessarily show that USCIS's treatment of Plaintiffs' petition followed logically from agency precedent; none of these discussed any requirement for evidence related to the path of funds within a currency swap provider.  *See* Opp'n at 20 (citing *Matter of C-Y-*, 2016 WL 4619963, at *3 (AAO Aug. 19, 2016); *Matter of [Redacted]*, 2014 WL 4113942, *5 (AAO May 29, 2014); *Matter of [Redacted]*, 2014 WL 4114100, at *5 (AAO May 12, 2014); *Matter of [Redacted]*, 2009 WL 1742398, at *16 (AAO Mar. 6, 2009)).

Because Plaintiff has not established that a contemporaneous construction exception exists or argued that any of the recognized record rule exceptions applies, the Court denies her motion for discovery.  However, the Court does so without prejudice to Plaintiff's filing of a new motion for discovery that relies on the APA's record-rule framework if she wishes to do so.  The parties' arguments on any such motion should address D.C. Circuit case law regarding the record rule and its exceptions, and should also discuss the extent to which the requirements that an agency satisfactorily explain its decision and supply a reasoned analysis for a change in course bear on any renewed request for discovery.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *United Student Aid Funds*, 237 F. Supp. 3d at 5; *Am. Bar Ass'n*, 370 F. Supp. 3d at 32–33. Further, to aid the Court's consideration, the parties should file and cite to the administrative record together with the briefing on any renewed discovery motion. *Cf. Chang*, 254 F. Supp. 3d at 163.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Discovery (ECF No. 9), is **DENIED** without prejudice. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  03/25/2022                                                    RUDOLPH CONTRERAS
                                                                                       United States District Judge