**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| VAN NU TU TRUONG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-316 (RC) |
| | : | | |
| v. | : | Re Document No.: | 32 |
| | : | | |
| UNITED STATES CITIZENSHIP AND | : | | |
| IMMIGRATION SERVICES, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR LIMITED DISCOVERY AND ORDERING DEFENDANTS TO FILE MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Van Nu Tu Truong challenges under the Administrative Procedure Act ("APA") the denial of her immigration petition through the EB-5 visa program by United States Citizenship and Immigration Services ("USCIS" or the "agency"). Specifically, Plaintiff requests that the Court vacate USCIS's denial of Plaintiff's I-526 petition for classification as an EB-5 investor because: (1) USCIS's denial of Plaintiff's petition was arbitrary and capricious agency action that misapplied 8 C.F.R. § 204.6(e) and that was not supported by substantial evidence; (2) USCIS impermissibly applied a new agency policy and practice retroactively to Plaintiff's petition; and (3) USCIS promulgated a substantive rule of general applicability without the required notice-and-comment rulemaking. Compl. ¶¶ 6, 10, 50–72, ECF No. 1. Although Defendants filed the administrative record in this matter on May 6, 2022, Admin. R., ECF No. 31, Plaintiff filed a renewed motion for leave to propound "limited" discovery, arguing

that hers is "the rare APA case" in which extra-record discovery should be permitted, Pl.'s Renewed Mot. for Discovery at 9, ECF No. 32 (citation omitted).

For the reasons detailed below, the Court finds that Plaintiff's request for discovery is premature. Despite Plaintiff's assertion that effective judicial review would not be possible based on the record in this case, it appears that the Court may not in fact need to address Plaintiff's contention that USCIS promulgated a new agency policy or practice, but may instead decide the matter on other grounds that the parties would more thoroughly address at the summary judgment stage. The Court therefore directs Defendants to submit their motion for summary judgment on or before 45 days from the date of this Opinion, subject to the directions provided below regarding certain issues that Defendants must address in that motion in the interest of more effective briefing from both parties.

## II.  BACKGROUND

### A.  Statutory and Regulatory Background

Through the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, Congress amended the Immigration and Nationality Act ("INA") and created the EB-5 visa program, allotting "employment creation" visas to immigrants who invest in a "new commercial enterprise" ("NCE") that "will benefit the United States economy by creating full-time employment" for at least ten individuals "lawfully authorized to be employed in the United States." 8 U.S.C. § 1153(b)(5)(A). Prior to the Department of Homeland Security's ("DHS") rule change in 2019 amending the regulations governing the EB-5 program and raising the investment thresholds for applicants, applicants seeking lawful permanent residence through the EB-5 program only qualified if they invested capital of at least one million dollars—or at least $500,000, if invested in a high unemployment or rural area ("targeted employment areas," or

"TEAs")—in a new commercial enterprise.  *See* 84 Fed. Reg. 35750, 35751 (July 24, 2019).  The INA and its implementing regulations define the term "capital" so as to exclude "assets directly or indirectly acquired by unlawful means."  8 U.S.C. § 1153(b)(5)(D)(ii)(III)(aa); 8 C.F.R. § 204.6(e) ("Assets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital for the purposes of section 203(b)(5) of the Act.").

In 1992, Congress created a "pilot immigration program," Dep'ts of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (Oct. 6, 1992), which set aside EB-5 visas for "individuals who invest in new commercial enterprises through DHS-designated regional centers," 82 Fed. Reg. 3211, 3212 (Jan. 11, 2017).  Following the creation of this program, EB-5 applicants could apply either through the standard EB-5 visa pathway or the "Regional Center Program."  Cong. Rsch. Serv., R44475, EB-5 Immigrant Investor Visa, at 5–6 (2021), https://sgp.fas.org/crs/homesec/R44475.pdf.

To apply for an EB-5 visa, applicants must, among other steps, submit USCIS Form I-526 and furnish the required fees, initial evidence, and supporting documentation.  8 C.F.R. § 204.6(a); Defs.' Opp'n to Pl.'s Mot.for Leave for Discovery ("Defs.' First Opp'n") at 5, ECF No. 11.  Specifically, as relevant here, applicants must provide evidence that they have invested or are actively in the process of investing "lawfully obtained capital" (or, if investing in a regional center, "capital obtained through lawful means").  8 C.F.R. § 204.6(j).  The regulations further specify that:

> (3) To show that the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means, the petition must be accompanied, as applicable, by:
>
>   (i) Foreign business registration records;

> (ii) Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;
>
> (iii) Evidence identifying any other source(s) of capital; or
>
> (iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

*Id.* § 204.6(j)(3).[1]  If denied, the applicant is notified of the reasons for the denial and has the right to appeal the denial to USCIS's Administrative Appeals Office ("AAO").  *Id.* § 204.6(k).

### B. Factual Background

Currently before this Court is Plaintiff's second attempt at seeking discovery, Pl.'s Renewed Mot. for Discovery, ECF No. 32, following this Court's denial without prejudice of Plaintiff's first such attempt, *see Truong v. USCIS.*, No. 21-cv-316, 2022 WL 888192 at *4 (D.D.C. Mar. 25, 2022).  The Court presumes familiarity with its prior opinion but reiterates the claims and some of the facts relevant to this Opinion.

Plaintiff filed her I-526 petition for an EB-5 visa in December 2016, Compl. ¶ 31, based on an investment of $500,000 through the Regional Center Program in an NCE in LaGrange, Georgia, *id.* ¶ 28; Admin. R. at 1, ECF No. 31-1.  To make this monetary investment, Plaintiff—a citizen of Vietnam, which "tightly restricts the conversion and transfer of currency"—engaged in a "currency swap."  Compl. ¶ 30.  That is, she purportedly transferred the equivalent of

---

[1] In 2019, there were minor changes to the definition of "capital" in 8 C.F.R. § 204.6(e) and 8 C.F.R. § 204.6(j)(2)(iii).  *See* 84 Fed. Reg. 35808, 35808–09 (July 24, 2019).  These changes are not relevant to the analysis of the pertinent regulations here.

approximately $550,050 in Vietnamese currency to a Vietnamese affiliate of a Singaporean company, VNT Trading and Investment, Pte. ("VNT Trading," doing business as "Minh Long Money Transfer"); VNT Trading, in turn, transferred $550,025 from its bank account in Singapore to the NCE in Georgia on November 25, 2016.  *Id.*; Admin. R. at 10, ECF No. 31-1.

In April 2018, USCIS issued a Request for Evidence ("RFE") on Plaintiff's petition, citing an applicant's obligation under 8 C.F.R. §§ 204.6(e) and (j)(3) to establish that the capital invested had been acquired by lawful means.  Admin. R. at 1515, ECF No. 31-12.  In particular, the RFE in part sought additional evidence establishing that the funds transferred by VNT Trading to the NCE had been obtained through lawful means.  *Id.* at 1516.  The RFE also noted that "USCIS must be able to determine the lawful source of the claimed investment funds and the evidence must clearly document the flow of the investment funds from their initial origin until they are deposited into the investment accounts."  *Id.*  Though Plaintiff submitted additional documentation in response to the RFE, in November 2018 USCIS issued a Notice of Intent to Deny ("NOID") Plaintiff's petition, noting a number of deficiencies in Plaintiff's documentation of the funds' path and the lawfulness of the U.S. dollars sent to the NCE's account.  *Id.* at 1537–41.  For instance, USCIS stated that Plaintiff had not sufficiently demonstrated that Plaintiff's funds in Vietnamese currency, purported to have been transferred to VNT Trading's representative in Vietnam, were in fact deposited into VNT Trading's accounts in Vietnam or where those funds went next.  *Id.* at 1537–38.  Though Plaintiff had provided a document showing a withdrawal of Vietnamese currency from her account, there was, according to the agency, "an apparent break or breaks in the path of funds between [Plaintiff's] account in Vietnam showing large cash withdrawal . . . and the claimed receipt of funds later . . . to the NCE escrow account."  *Id.* at 1538.  Nor, according to USCIS, did Plaintiff's documentation "establish

5

that [VNT Trading was] a legitimate money exchange service business operating legally out of Singapore and Vietnam or that their funds used in the exchange were lawfully attained." *Id.*. USCIS noted further that the business code shown on a business registration certificate submitted by Plaintiff for one company appeared to instead belong to another company. *Id.* at 1539. In March 2019, USCIS denied Plaintiff's petition, stating that, as highlighted in the RFE and NOID, USCIS had identified various inconsistencies and gaps in Plaintiff's evidence related to VNT Trading and the path that the funds had taken from Plaintiff to the NCE. *Id.* at 1597, 1602–05, ECF No. 31-13.

Subsequently, Plaintiff appealed the denial to the AAO. *Id.* at 1624, ECF No. 31-13. Plaintiff contended in part that USCIS had: (1) issued "new evidentiary and legal requirements requiring [Plaintiff] to prove not only her lawful source of funds, but also an unrelated third-party company's lawful funds and operations," *id.* at 1627 (emphasis removed), and (2) treated her petition differently from comparable petitions involving currency swaps, *id.* at 1634. The appeal alleged that USCIS had, prior to Plaintiff's petition, positively adjudicated petitions involving currency swaps without requesting "independent evidence of the source of the [U.S. dollars] acquired in the currency swap," and that "even after USCIS issued the first RFE on the currency swap . . . USCIS continued to approve cases with indistinguishable fact patterns and no additional evidence involving the same currency swap transaction." *Id.*

But in September 2020, the AAO dismissed Plaintiff's appeal, emphasizing the "unresolved inconsistencies" that led the AAO to "question the reliability and sufficiency of the submitted evidence regarding the lawful source of funds VNT Trading remitted to the NCE on behalf of the [Plaintiff]." *Id.* at 1702. The AAO rejected Plaintiff's arguments objecting to the requirement that Plaintiff provide evidence as to the lawfulness of the third party's funds, stating

6

that "[t]he record must trace the path of the funds back to a lawful source." *Id.* at 1703. In its decision, the AAO highlighted, among other issues, the deficiencies in Plaintiff's documentation of the path of funds, stating:

> A letter dated November 22, 2016, from Peggy Nguyen, Deputy Director of NVT Trading (d/b/a Minh Long Money Transfer), indicates Mr. Van Vinh Nguyen, ostensibly a representative of the company in Ho Chi Minh City, Vietnam, collected 12,475,134,000 VND from the Petitioner on November 22, 2016. . . .
>
> We find the Petitioner has not demonstrated, by a preponderance of the evidence, the path of the funds used in the currency exchange or the lawful source of the funds submitted by VNT Trading to the NCE on behalf of the Petitioner. The statements provided by Ms. Nguyen claim the Petitioner provided the 12,808,000,000 VND in cash to her representative in Vietnam. In support, the Petitioner has provided her bank account statement showing she withdrew the VND funds and a receipt, signed by Ms. Nguyen, stating Mr. Nguyen received the VND funds on November 22, 2016. However, the Petitioner did not provide any documents such as bank statements to confirm VNT Trading actually received the VND funds in its business accounts in Vietnam. Furthermore, the Petitioner did not provide any documents confirming Mr. Nguyen was employed by VNT Trading or authorized to receive funds on the company's behalf, or explaining what he did with the Petitioner's funds. The record must trace the path of the funds back to a lawful source. . . . Here, the Petitioner has not made such a showing.

*Id.* at 1699, 1701.

Plaintiff filed the complaint in this matter on February 4, 2021, requesting that the Court vacate USCIS's denial of Plaintiff's I-526 petition because: (1) USCIS's denial of Plaintiff's petition was arbitrary and capricious agency action that misapplied 8 C.F.R. § 204.6(e) and that was also not supported by substantial evidence; (2) USCIS impermissibly applied a new agency policy and practice retroactively to Plaintiff's petition; and (3) USCIS promulgated a substantive rule of general applicability without notice-and-comment rulemaking. Compl. ¶¶ 6, 10, 50–72. Plaintiff then filed her first motion for discovery, which this Court denied without prejudice while observing "some intuitive appeal to Plaintiff's argument" for discovery and commenting that Plaintiff's request "*might* . . . fit into the exception to the record rule for [APA] cases in which 'the district court cannot determine from the administrative record whether the agency

7

complied with its procedural obligations.'"  *Truong*, 2022 WL 888192 at *3 (emphasis in original).

Defendants filed the administrative record in this matter on May 6, 2022.  Admin. R.  Plaintiff then filed the instant renewed motion for leave to propound "limited" discovery, arguing that Plaintiff's is "the rare APA case" in which extra-record discovery should be permitted.  Pl.'s Renewed Mot. for Discovery at 9 (citation omitted).  Specifically, Plaintiff's requested discovery would encompass "requests for agency guidance regarding currency swaps (for examples, all prior versions of the training materials at AR 1707–45), prior agency adjudications involving currency swaps, and similar information."  *Id.* at 19; *see also* Pl.'s Mot. for Discovery at 16–17, ECF No. 9.  Defendants oppose the motion, responding that Plaintiff has not met her burden in demonstrating that her case falls under any of the D.C. Circuit's exceptions to the general rule against admitting extra-record evidence in APA cases or in overcoming the presumption of regularity accorded to an agency's designation of the administrative record.  Defs.' Opp'n to Plaintiff's Renewed Mot. for Discovery ("Defs.' Second Opp'n") at 5–16, ECF No. 33.

In their filings, Plaintiff and Defendants both point to two documents in the administrative record about USCIS's approach to currency swaps.  *Id.* 9–10; Pl.'s Renewed Mot. for Discovery at 15–17.  The first of these records consists of "[r]emarks" from a February 2016 USCIS "Stakeholder Engagement" that state:

> We received quite a few questions regarding source of funds.  Specifically we were asked if we accept private currency exchange.  We will accept private currency exchange.  The thing that is important to remember about this is that lawful source of funds must be shown, and the path of funds must be clearly documented and demonstrated.  Also, depending on the specific circumstances, we may require evidence from the petitioner to validate the lawful source of third party funds involved in the transaction.

8

Admin. R. at 1705, ECF No. 31-14.  The second of these records, a training slide deck for "identify[ing] and adjudicat[ing] I-526 petitions where Petitioner utilizes a third party exchanger to facilitate a transfer of funds to the NCE," *id.* at 1708, is dated May 2019, *id.* at 1707.

### III.  LEGAL FRAMEWORK

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  Undertaking this review, a court has the power to hold unlawful and set aside agency action that the court finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  *Id.* § 706(2)(A), (D).  The court's review "is highly deferential to the agency," such that "so long as [the agency decision] has some rational basis, the court is bound to uphold the decision."  *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 113 (D.D.C. 2010).  Thus, "where . . . an agency has set out multiple independent grounds for a decision," the Court "will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable."  *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014) (quoting *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003)); *see also, e.g.*, *Doe v. USCIS*, 410 F. Supp. 3d 86, 96 (D.D.C. 2019) ("Because USCIS offered and defended with substantial factual support multiple, independent grounds for denying the visa petitions, USCIS need only show that one of the grounds for denial was sufficient in order to prevail in this matter.").

"[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting

*Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)).  An agency also "enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).  Accordingly, "[d]iscovery typically is not available in APA cases." *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011) (citation omitted).  "But if a party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record, it should be granted limited discovery." *Id.* (citation omitted).  Stated elsewhere, "[d]iscovery is permitted 'only in two circumstances': (1) upon 'a strong showing of bad faith or improper motive'; and (2) 'in the rare case in which the record is so bare as to frustrate effective judicial review.'" *Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 271 (D.D.C. 2013) (quoting *Cmty. for Creative Non–Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990)); *see also Com. Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998).[2]

---

[2] Plaintiff's arguments lean heavily on the caselaw related to the admission of extra-record evidence outside the administrative record, *see* Pl.'s Renewed Mot. for Discovery at 5–9, despite acknowledging that there is a separate, if substantially similar, standard for discovery, *see id.* at 18.  As Plaintiff highlights, *see* Pl.'s Reply Supp. Limited Discovery at 9–10, ECF No. 34, cases in this Circuit have distinguished between "supplementing the [administrative] record" and "permitting consideration of extra-record evidence," *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5–6 (D.D.C. 2006); *see also Oceana, Inc. v. Locke*, 674 F. Supp. 2d 39, 44 (D.D.C. 2009) ("One situation involves a claim 'that some information that should have properly been included in the administrative record was not,' while the other involves a request for judicial consideration of evidence that exists apart from the administrative record, on the theory that if the Court did not consider that evidence, 'reviewing agency action would be unnecessarily difficult.'" (citation omitted)).

It is not clear that Plaintiff's request for discovery—based on the premise that there may have been an "internal directive" causing a change in policy and practice, Compl. ¶ 26, and that there are precedents demonstrating this change, Admin. R. at 1634, ECF No. 31-13, that are not

## IV.  ANALYSIS

Given the standard for discovery, the central question for this Court is whether Plaintiff has either made a "significant showing" that she will find material in Defendants' possession indicative of bad faith or an incomplete record, or demonstrated that the administrative record is so bare as to frustrate effective judicial review.  *Air Transport*, 663 F.3d at 487.  Plaintiff has not alleged any bad faith by Defendants.  The thrust of Plaintiff's motion for discovery is instead that, to conduct its review of Plaintiff's claims, the Court must first resolve the factual dispute of whether USCIS changed its policy or practice so as to inquire about the lawfulness of funds transferred by third-party currency exchangers where USCIS had not made such inquiries in the past.  Plaintiff contends that USCIS misapplied its own regulations; that USCIS's denial of Plaintiff's petition was arbitrary and capricious; that the agency applied a new policy retroactively and impermissibly; and that USCIS implemented a new substantive rule of general applicability that required notice-and-comment rulemaking.  According to Plaintiff, because these claims each rely as a threshold matter on USCIS having instituted a new policy or practice in examining the lawfulness of currency swap funds, and the administrative record is too bare for

---

reflected in the administrative record—fits neatly into either bucket, *see Lillemoe v. United States Dep't of Agric., Foreign Agric. Serv.,* No. 15-cv-2047, 2019 WL 4750241, at *1 n.3 (D.D.C. Sept. 30, 2019); *compare Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 541 n.6 (D.D.C. 2021) ("Defendants fault Plaintiffs for not mention[ing] the 'unusual circumstances' standard utilized in the D.C. Circuit to evaluate requests for record supplementation, but that is not the standard when, as here, a movant seeks discovery of the agency's decision-making process.") (cleaned up and citations omitted), *with Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) ("Discovery or supplementation of the administrative record is therefore not permitted 'unless [a party] can demonstrate unusual circumstances justifying a departure from this general rule.'" (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010))).

Given that the D.C. Circuit has clearly articulated a standard for requests for discovery in APA claims that postdates the standard for extra-record evidence set forth in cases such as *City of Dania Beach*, this Court hews to that discovery standard rather than that related to admitting extra-record evidence.

11

the Court to discern whether there was in fact such a new policy or practice, the Court must permit limited discovery to facilitate its review.

But upon consideration of the current record and the parties' briefing on the instant motion, Plaintiff has not established that the Court must order discovery to enable effective judicial review. Instead, it appears that the Court may, with the benefit of summary judgment briefing from both parties, be able to adjudicate Plaintiff's APA claims without determining whether USCIS in fact changed its policy or practice so as to newly require that the source and lawfulness of currency exchangers' funds be documented. Specifically, the Court observes that USCIS articulated additional grounds for denying Plaintiff's EB-5 petition that were based instead on Plaintiff's inability to fully trace the path of her funds. If those grounds indeed provide a sufficient basis under the APA for the Court to affirm the agency's action, then discovery may not be necessary here. The Court will therefore deny Plaintiff's motion for discovery as premature, but will decide, after full summary judgment briefing from both parties, whether the Court may resolve the matter without discovery or will allow Plaintiff to renew her motion for discovery.

Accordingly, the Court orders Defendants to file their motion for summary judgment on or before 45 days from the date of this Opinion. In their motion for summary judgment, Defendants shall not only address the possible alternative grounds for affirming the agency's decision that are highlighted in this Opinion, but will also include their arguments explaining why, even if those alternative grounds do not suffice to resolve the matter, Plaintiff's arguments as to an alleged change in agency policy or practice fail. In that regard, Defendants will explain certain representations made in *Jing Zhou v. USCIS*, No. 19-cv-2650-TJK (D.D.C.)—regarding a

change in the frequency at which USCIS adjudicators asked questions about third-party funds used in currency swaps for EB-5 petitions—of which the Court takes judicial notice.

### A. Alternative Grounds for Affirming USCIS's Denial

Plaintiff's renewed motion for discovery rests primarily on the contention that the Court cannot resolve the matter without deciding the factual dispute of whether USCIS implemented a new policy or practice related to inspecting the lawfulness of third-party currency exchangers' funds. It appears to the Court, however, that the Court need not address this factual dispute because USCIS provided other reasons, independent of this alleged change, for denying Plaintiff's EB-5 petition. From its NOID through the AAO's dismissal of Plaintiff's appeal, USCIS stressed consistently that Plaintiff had failed to provide the necessary documentation proving: (1) that Mr. Van Vinh Nguyen was a representative authorized to receive funds on behalf of VNT Trading in Vietnam, (2) what Mr. Nguyen did with the Vietnamese currency funds after receiving them from Plaintiff, and (3) whether VNT Trading in fact received Plaintiff's funds in its business accounts in Vietnam. Admin. R. at 1699, 1701–02, ECF No. 31-13. Those deficiencies provided USCIS with additional, independent grounds for denying Plaintiff's petition, wholly separate from the issue of whether Plaintiff could show that VNT Trading acquired the assets that it remitted to the NCE through lawful means. Because USCIS "set out multiple independent grounds" for its decision, it appears that the Court could affirm the agency's denial of Plaintiff's application based on these other deficiencies without needing to address USCIS's approach to the lawfulness of third-party currency exchangers' funds. *See Fogo De Chao*, 769 F.3d at 1149. In turn, because the Court may be able to resolve the matter on these other grounds, the existing record may suffice for effective judicial review, such that it need not be supplemented through discovery.

Plaintiff may respond that the factual dispute at issue here is not limited to whether USCIS began to scrutinize the lawfulness of third-party currency exchangers' funds. That is, Plaintiff might contend that the Court cannot simply affirm the agency's decision on these alternative "path of funds" grounds because the Court must first decide whether there was a shift in agency policy or practice for USCIS to ask Plaintiff questions about *any* aspect of a third-party currency exchanger's involvement in the movement of funds at all. But the declarations attached in support of Plaintiff's renewed motion for discovery do not describe the alleged factual dispute in such broad terms: while they allege a change in whether USCIS scrutinized the source and lawfulness of third-party currency exchangers' funds, they do not assert that USCIS would have been implementing a new policy or practice by requiring that EB-5 petitioners trace the steps by which their funds arrived with a currency exchanger. *See* Morris Decl. ¶ 8, ECF No. 32-2 ("[I]n a large number of cases, USCIS had issued RFEs . . . asking investors to prove how the third-party currency exchangers acquired their assets. Those RFEs caught many investors and their attorneys off guard, as prior to 2017, USCIS had never before asked for such evidence."); Grau Decl. ¶ 8, ECF No. 32-1 (observing that Invest In the USA's members reported that prior to early 2017, "USCIS had never issued RFEs or denials requesting" information about how the third parties who facilitated the currency swaps acquired their assets); Mito Decl. ¶ 13, ECF No. 32-3 ("[B]efore 2017, USCIS did not require (nor did investors generally submit) evidence that third parties who assisted with currency swaps acquired their currency through lawful means.").

Moreover, even if Plaintiff intended to allege that USCIS's inquiry into Mr. Nguyen's role and actions in the currency swap amounted to a change in agency policy or practice, such an argument would be undermined by USCIS's public decisions demonstrating the agency's longstanding requirement that EB-5 petitioners document thoroughly the paths of their funds

14

through a third party involved in the transaction. According to Plaintiff, "[f]our precedential decisions have long guided EB-5 adjudications." Compl. ¶ 24. In one of those decisions, *In Re Izummi*, 22 I. & N. Dec. 169 (BIA 1998), USCIS indicated that a petitioner must document the path of her funds, such as by providing wire transfer records. *Id.* at 195. The agency's adjudications, including that in Plaintiff's case, have reflected this requirement. For instance, in 2014, the agency denied a petitioner's EB-5 application in part because, in failing to document his cash transfer to the broker that then wire transferred funds to the NCE's account, the petitioner had not properly documented the path of his funds or "[met] his burden of establishing that the funds are his own funds." *Matter of [Redacted]*, 2014 WL 4114100, at *5 (AAO May 29, 2014). Although the petitioner had provided "the agreements with the petitioner's broker to transfer funds," this evidence "did not establish that the broker received U.S. currency in cash or *that any received cash actually belonged to the petitioner*." *Id.* (emphasis added). Similarly, the agency in 2016 concluded that another petitioner had not sufficiently documented the path of her funds because, despite submitting evidence showing that 11 individuals were involved in the movement of the petitioner's funds to the NCE, she "did not submit sufficient documentary evidence to establish the transfer of funds from the Petitioner's [IDENTIFYING INFORMATION REDACTED BY AGENCY] account to each of the 11 individuals' accounts." *Matter of C-Y- Appeal of Immigrant Investor Program Office Decision Form I-526, Immigrant Petition By Alien Entrepreneur*, 2016 WL 4619963, at *7–8 (AAO Aug. 19, 2016).

Further, in *Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12 (D.D.C. 2018), another court in this District concluded that it was not arbitrary or capricious for the agency to deny the plaintiff's visa application for failing to document the complete path of her investment funds. *Id.* at 18. The plaintiff in *Sadeghzadeh* had not provided records showing "how the funds made their way

15

from her bank account in Iran to the wiring companies in Dubai" that purportedly transferred the plaintiff's investment to the NCE.  *Id.*  The court affirmed that the AAO was "well within its discretion to demand evidence to fill that evidentiary gap," and found that the agency had met its obligation by making clear that, "having failed to provide *any* corroborating proof of the movement of funds to Dubai or information concerning the identities of the wiring companies, [the plaintiff] had not met her evidentiary burden."  *Id.* (emphasis in original).

These cases do not indicate that currency exchangers were involved, nor do they establish any agency policy or practice in scrutinizing the source and lawfulness of currency exchangers' funds.  They do show, however, that the agency has long considered its "path of funds" requirement to include documenting how third parties involved in the movement of funds received those funds from the EB-5 petitioner.  This caselaw would therefore seem to rebuff any attempt by Plaintiff to argue that the Court cannot resolve the matter based on Plaintiff's failure to satisfy the agency's "path of funds" requirement.  That is, the Court need not order discovery and resolve whether USCIS implemented a new policy or practice in requesting proof that Plaintiff's funds were in fact deposited with VNT Trading in Vietnam.  The caselaw, whether at the agency level or in this District, already indicates that such a requirement was not new.

Thus, the Court remains unconvinced that it must order discovery to facilitate effective judicial review of this matter.  It appears that the Court may be able to affirm the agency's decision to deny Plaintiff's EB-5 application for her failure to document properly the path of her funds, without needing to venture into the factual dispute she alleges.  But because neither of the parties has briefed its position as to whether the Court may indeed affirm the agency's denial of Plaintiff's EB-5 petition on these alternative grounds, the Court will allow the parties the opportunity to do so through full summary judgment briefing.  Upon completion of briefing, the

Court will be in a better position to assess whether the record suffices for the Court to make its decision or whether the Court should allow Plaintiff to renew her motion for discovery. Accordingly, the Court denies as premature Plaintiff's renewed motion to propound discovery and orders Defendants to proceed with filing their motion for summary judgment per the directions offered below.

### B.  *Jing Zhou*

In the interest of efficient briefing, Defendants should in their motion for summary judgment not only address whether the Court may affirm the agency's decision based on the above grounds, but also include their arguments in the alternative explaining why, even if those alternative grounds do not suffice, Plaintiff's arguments as to an alleged change in agency policy or practice fail.  In so doing, they must explain certain representations made by defense counsel in *Jing Zhou* of which the Court takes judicial notice.  *See, e.g.*, *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (taking judicial notice of record in related action "pursuant to [the court's] authority to judicially notice related proceedings in other courts").

Responding to Plaintiff's renewed motion for discovery, Defendants point to *Jing Zhou*—which Defendants describe as "another case within this judicial district involving the *same* immigration program, with the *same* issues, and against the *same* agency practice [that] has already completed summary-judgment briefing . . . without discovery"—to support their contention that this case may similarly proceed to summary judgment.  Defs.' Second Opp'n at 16 (emphases in original).  This case and *Jing Zhou* indeed share some similarities.  The plaintiff in *Jing Zhou*, Ms. Zhou, challenges USCIS's denial of her EB-5 petition based, in part, on Ms. Zhou's alleged failure to provide sufficient evidence of the lawfulness of the funds provided by a third-party currency exchanger.  First Am. Compl. ¶¶ 63–81, *Jing Zhou v. USCIS*, 19-cv-2650-

17

TJK (Sept. 15, 2020), ECF No. 16.  Ms. Zhou argues that this denial is arbitrary and capricious because USCIS changed its policy so as "to deny petitions for failing to document the lawful source of an intermediary's currency" and "Plaintiff, and thousands like her, had no inclination that Defendants would change the rules and create a new requirement for documenting the lawful source of someone else's currency."  Pl.'s Mot. Summ. J. at 22, *supra*, ECF No. 24.  Like Plaintiff here, Ms. Zhou claims that the denial of her petition was arbitrary and capricious and that USCIS impermissibly applied a new policy retroactively and without the requisite notice-and-comment rulemaking.  *Id.* at 20–28.  And as Defendants here point out, *Jing Zhou* has completed briefing without discovery.[3]  Defs.' Second Opp'n at 16.

Recognizing that USCIS and the other defendants in *Jing Zhou* ("the *Jing Zhou* defendants") are represented by different individual defense counsel than that here, the Court nevertheless notes that the defendant agency and the component of the Department of Justice defending the agency are the same.  Moreover, Defendants here rely on fundamentally the same argument as do the *Jing Zhou* defendants—that USCIS has not changed its policy in relation to third-party currency exchangers.  *Compare* Defs.' Cross-Motion Summ. J., *Jing Zhou*, 19-cv-02650-TJK (Mar. 31, 2021), ECF No. 27, *with* Defs.' Second Opp'n.  Given that the Court will deny Plaintiff's request for discovery, it is all the more important that at this next stage the Court receive effective briefing on certain statements made in *Jing Zhou*.

Specifically, the *Jing Zhou* defendants make several representations that the Court notes with interest.  In their Opposition and Cross-Motion for Summary Judgment, the *Jing Zhou*

---

[3] The Court notes, however, that Ms. Zhou suggests belatedly in her Opposition to Defendants' Cross-Motion for Summary Judgment that discovery may be appropriate to determine whether USCIS was implementing a new policy or practice in scrutinizing the lawfulness of a currency exchanger's funds.  Pl.'s Resp. Opp'n Defs.' Cross-Mot. Summ. J. at 10, *Jing Zhou*, 19-cv-2650-TJK (Apr. 16, 2021), ECF No. 29.

defendants deny that USCIS changed its policy in questioning the source of funds of third-party intermediaries. Defs.' Opp'n and Cross-Mot. Summ. J. at 11–13, *Jing Zhou*, 19-cv-2650-TJK (Mar. 15, 2021), ECF No. 27. But they then also state the following:

> The only thing that changed in [sic] that adjudicators purportedly began more frequently asking additional questions in order to determine whether the funds came from a lawful source. There is no authority for the proposition that an agency must engage in notice and comment rulemaking before increasing the frequency of asking additional questions it always had the ability to ask in order to now determine whether a petitioner has complied with the applicable regulations.

*Id.* at 14–15 (footnote omitted). Subsequently, in a footnote in their Reply in Support of the Cross-Motion for Summary Judgment, the *Jing Zhou* defendants state: "Ms. Zhou may be able to point to instances where third-party funds in the currency swap context have been questioned more frequently due to the increase of currency swaps with unidentified third-parties and money exchangers, but this does not amount to a 'new rule.'" Defs.' Reply Supp. Cross-Mot. Summ. J. at 4 n.4, *supra*, ECF No. 30.

*Fogo De Chao* suggests that a change in pattern of "sufficient magnitude" may be a change that the agency may be obligated to explain. 769 F.3d at 1144. In *Fogo De Chao*, the plaintiff challenged the denial of a visa to one of its chefs, arguing that DHS had previously granted over 200 such visas to its chefs and that this denial "was an abrupt and unexplained departure from prior agency practice granting such visas without the . . . evidentiary demand imposed here." *Id.* The D.C. Circuit observed in dicta that "it may be that a pattern of visa grants of sufficient magnitude could obligate the agency to provide a 'reasoned explanation for . . . treating similar situations differently.'" *Id.* (quoting *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995)). The question here, then, is whether the statements in *Jing Zhou* should be understood to acknowledge that there has been a change in USCIS's *practice*—whether reflected in explicit policy or not—to scrutinize the lawfulness of third-party currency exchangers' funds

19

more often and/or with greater emphasis than USCIS did before and to make decisions about EB-5 petitions on that basis. Counsel for Defendants are therefore directed to explain in Defendants' forthcoming motion for summary judgment whether Defendants: (1) agree that the statements from *Jing Zhou* are accurate, and (2) if the statements are accurate, address with specificity why the Court should or should not understand an increase in the frequency with which USCIS inquired about the lawfulness of third-party currency exchangers' funds to amount to a change in the agency's practice.

## V.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Renewed Motion to Propound Discovery. The Court also **ORDERS** Defendants to file their motion for summary judgment, which will be due on or before 45 days from the date of this Opinion, subject to the directions provided in this Memorandum Opinion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 1, 2022                                                    RUDOLPH CONTRERAS
                                                                       United States District Judge