UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VAN NU TU TRUONG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-316 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 37, 39 |
| | : | | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | : : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

Plaintiff Van Nu Tu Truong ("Plaintiff" or "Truong") challenges under the Administrative Procedure Act ("APA") the denial of her immigration petition through the EB-5 visa program by United States Citizenship and Immigration Services ("USCIS" or the "agency"). Specifically, Truong requests that the Court vacate USCIS's denial of her I-526 petition for classification as an EB-5 investor because: (1) USCIS's denial of her petition was arbitrary and capricious agency action that misapplied 8 C.F.R. § 204.6(e) and that was not supported by substantial evidence; (2) USCIS impermissibly applied a new agency policy and practice retroactively to her petition; and (3) USCIS promulgated a substantive rule of general applicability without the required notice-and-comment rulemaking. Compl. ¶¶ 6, 10, 50–72, ECF No. 1.  In December 2022, this Court denied Truong's renewed motion for leave to propound "limited" discovery, explaining that it found her request for discovery to be premature because it appeared that the Court might decide the matter on other grounds that the parties

would more thoroughly address at the summary judgment stage. *Truong v. USCIS*, No. 21-cv-316, 2022 WL 17356865, at *1 (D.D.C. Dec. 1, 2022). The parties have now submitted their respective motions for summary judgment. For the reasons detailed below, the Court grants Defendants' motion for summary judgment and denies Truong's cross-motion for summary judgment.

## II.  BACKGROUND

Although the Court already recounted the relevant background for this matter in its prior opinion, it reproduces those sections of that opinion below and provides additional details as necessary for this decision. *See Truong*, 2022 WL 17356865, at *1–4.

### A.  Statutory and Regulatory Background

Through the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, Congress amended the Immigration and Nationality Act ("INA") and created the EB-5 visa program, allotting "employment creation" visas to immigrants who invest in a "new commercial enterprise" ("NCE") that "will benefit the United States economy by creating full-time employment" for at least ten individuals "lawfully authorized to be employed in the United States." 8 U.S.C. § 1153(b)(5)(A). Prior to the Department of Homeland Security's ("DHS") rule change in 2019 amending the regulations governing the EB-5 program and raising the investment thresholds for applicants, applicants seeking lawful permanent residence through the EB-5 program qualified only if they invested capital of at least one million dollars—or at least $500,000, if invested in a high unemployment or rural area ("targeted employment areas," or "TEAs")—in a new commercial enterprise. *See* EB-5 Immigrant Investor Program Modernization, 84 Fed. Reg. 35750, 35751 (July 24, 2019) (to be codified at 8 C.F.R. pts. 204, 216). The INA and its implementing regulations define the term "capital" so as to exclude

"assets directly or indirectly acquired by unlawful means." 8 U.S.C. § 1153(b)(5)(D)(ii)(III)(aa); 8 C.F.R. § 204.6(e) (2023) ("Assets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital for the purposes of section 203(b)(5) of the Act.").

In 1992, Congress created a "pilot immigration program," Dep'ts of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (Oct. 6, 1992), which set aside EB-5 visas for "individuals who invest in new commercial enterprises through DHS-designated regional centers," EB-5 Immigrant Investor Regional Center Program, 82 Fed. Reg. 3211, 3212 (Jan. 11, 2017) (to be codified at 8 C.F.R. pts. 204, 216). Following the creation of this program, EB-5 applicants could apply either through the standard EB-5 visa pathway or the "Regional Center Program." Cong. Rsch. Serv., R44475, EB-5 Immigrant Investor Visa 5–6 (2021), https://sgp.fas.org/crs/homesec/R44475.pdf.

To apply for an EB-5 visa, applicants must, among other steps, submit USCIS Form I-526 and furnish the required fees, initial evidence, and supporting documentation. 8 C.F.R. § 204.6(a); Defs.' Opp'n to Pl.'s Mot. for Leave for Disc. ("Defs.' First Opp'n") at 5, ECF No. 11. Specifically, as relevant here, applicants must provide evidence that they have invested or are actively in the process of investing "lawfully obtained capital" (or, if investing in a regional center, "capital obtained through lawful means"). 8 C.F.R. § 204.6(j). The regulations further specify that:

> (3) To show that the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means, the petition must be accompanied, as applicable, by:
>
> (i) Foreign business registration records;

3

>  (ii) Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;
>
>  (iii) Evidence identifying any other source(s) of capital; or
>
>  (iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

*Id.* § 204.6(j)(3).[1]  If denied, the applicant is notified of the reasons for the denial and has the right to appeal the denial to USCIS's Administrative Appeals Office ("AAO").  *Id.* § 204.6(k).

### B. Factual Background

Truong filed her I-526 petition for an EB-5 visa in December 2016, Compl. ¶ 31, based on an investment of $500,000 through the Regional Center Program in an NCE in LaGrange, Georgia, *id.* ¶ 28; Admin. R. at 1, ECF No. 45-1.  To make this monetary investment, Truong—a citizen of Vietnam, which "tightly restricts the conversion and transfer of currency"—engaged in a "currency swap."  Compl. ¶ 30.  That is, she purportedly transferred the equivalent of approximately $550,050 in Vietnamese currency to a Vietnamese affiliate of a Singaporean company, VNT Trading and Investment, Pte. ("VNT Trading," doing business as "Minh Long Money Transfer"); VNT Trading, in turn, transferred $550,025 from its bank account in Singapore to the NCE in Georgia on November 25, 2016.  *Id.*; Admin. R. at 10.

---

[1] In 2019, there were minor changes to the definition of "capital" in 8 C.F.R. § 204.6(e) and 8 C.F.R. § 204.6(j)(2)(iii).  *See* EB-5 Immigrant Investor Program Modernization, 84 Fed. Reg. 35808, 35808–09.  These changes are not relevant to the analysis of the pertinent regulations here.

In April 2018, USCIS issued a Request for Evidence ("RFE") on Truong's petition, citing an applicant's obligation under 8 C.F.R. §§ 204.6(e) and (j)(3) to establish that the capital invested had been acquired by lawful means. Admin. R. at 1515. In particular, the RFE in part sought additional evidence establishing that the funds transferred by VNT Trading to the NCE had been obtained through lawful means. *Id.* at 1516. The RFE also noted that "USCIS must be able to determine the lawful source of the claimed investment funds and the evidence must clearly document the flow of the investment funds from their initial origin until they are deposited into the investment accounts." *Id.*

Though Truong submitted additional documentation in response to the RFE, in November 2018 USCIS issued a Notice of Intent to Deny ("NOID") Truong's petition, noting a number of deficiencies in Truong's documentation of the funds' path and the lawfulness of the U.S. dollars sent to the NCE's account. *Id.* at 1537–41. For instance, USCIS stated that Truong had not sufficiently demonstrated that her funds in Vietnamese currency, purported to have been transferred to VNT Trading's representative in Vietnam, were in fact deposited into VNT Trading's accounts in Vietnam or where those funds went next. *Id.* at 1537–38. Though Truong had provided a document showing a withdrawal of Vietnamese currency from her account, there was, according to the agency, "an apparent break or breaks in the path of funds between [Plaintiff's] account in Vietnam showing large cash withdrawal . . . and the claimed receipt of funds later . . . to the NCE escrow account." *Id.* at 1538. Nor, according to USCIS, did Truong's documentation "establish that [VNT Trading was] a legitimate money exchange service business operating legally out of Singapore and Vietnam or that their funds used in the exchange were lawfully attained." *Id.* USCIS noted further that the business code shown on a business registration certificate submitted by Truong for one company appeared to instead belong to

5

another company. *Id.* at 1539. In March 2019, USCIS denied Truong's petition, stating that, as highlighted in the RFE and NOID, USCIS had identified various inconsistencies and gaps in her evidence related to VNT Trading and the path that the funds had taken from Truong to the NCE. *Id.* at 1597, 1602–05.

Subsequently, Truong appealed the denial to the AAO. *Id.* at 1624. She contended in part that USCIS had: (1) issued "new evidentiary and legal requirements requiring [Plaintiff] to prove not only her lawful source of funds, but also an unrelated third-party company's lawful funds and operations," *id.* at 1627 (emphasis removed), and (2) treated her petition differently from comparable petitions involving currency swaps, *id.* at 1634. The appeal alleged that USCIS had, prior to her petition, positively adjudicated petitions involving currency swaps without requesting "independent evidence of the source of the [U.S. dollars] acquired in the currency swap," and that "even after USCIS issued the first RFE on the currency swap . . . USCIS continued to approve cases with indistinguishable fact patterns and no additional evidence involving the same currency swap transaction." *Id.*

But in September 2020, the AAO dismissed Truong's appeal, emphasizing the "unresolved inconsistencies" that led the AAO to "question the reliability and sufficiency of the submitted evidence regarding the lawful source of funds VNT Trading remitted to the NCE on behalf of the [Plaintiff]." *Id.* at 1702. The AAO rejected her arguments objecting to the requirement that she provide evidence as to the lawfulness of the third party's funds, stating that "[t]he record must trace the path of the funds back to a lawful source." *Id.* at 1703. In its decision, the AAO highlighted, among other issues, the deficiencies in Truong's documentation of the path of funds, stating:

> A letter dated November 22, 2016, from Peggy Nguyen, Deputy Director of NVT Trading (d/b/a Minh Long Money Transfer), indicates Mr. Van Vinh Nguyen, ostensibly

> a representative of the company in Ho Chi Minh City, Vietnam, collected 12,475,134,000 VND from the Petitioner on November 22, 2016. . . .
>
> We find the Petitioner has not demonstrated, by a preponderance of the evidence, the path of the funds used in the currency exchange or the lawful source of the funds submitted by VNT Trading to the NCE on behalf of the Petitioner. The statements provided by Ms. Nguyen claim the Petitioner provided the 12,808,000,000 VND in cash to her representative in Vietnam. In support, the Petitioner has provided her bank account statement showing she withdrew the VND funds and a receipt, signed by Ms. Nguyen, stating Mr. Nguyen received the VND funds on November 22, 2016. However, the Petitioner did not provide any documents such as bank statements to confirm VNT Trading actually received the VND funds in its business accounts in Vietnam. Furthermore, the Petitioner did not provide any documents confirming Mr. Nguyen was employed by VNT Trading or authorized to receive funds on the company's behalf, or explaining what he did with the Petitioner's funds. The record must trace the path of the funds back to a lawful source. . . . Here, the Petitioner has not made such a showing.

*Id.* at 1699, 1701.

In February 2021, Truong filed her Complaint, requesting that the Court vacate USCIS's denial of her I-526 petition because: (1) USCIS's denial of her petition was arbitrary and capricious agency action that misapplied 8 C.F.R. § 204.6(e) and that was also not supported by substantial evidence; (2) USCIS impermissibly applied a new agency policy and practice retroactively to her petition; and (3) USCIS promulgated a substantive rule of general applicability without notice-and-comment rulemaking. Compl. ¶¶ 6, 10, 50–72. Truong then filed a motion to propound "limited" discovery that the Court denied. *Truong*, 2022 WL 17356865, at *1. In its denial of Truong's request for discovery, the Court explained that, because USCIS had also denied her petition based on her failure to fully trace the path of her funds, it appeared that the Court could affirm the agency's denial of her application without needing to address USCIS's approach to the lawfulness of third-party currency exchangers' funds. *Id.* at *6. Given that the parties had not fully briefed the issue, however, the Court ordered the parties to proceed to summary judgment. *Id.* at *10. The parties have now submitted their respective motions for summary judgment. While Defendants have moved for summary

7

judgment on all of Truong's claims, Mem. Supp. Defs.'s Mot. Summ. J. at 1, ECF No. 37-1, Truong has cross-moved for summary judgment only as to Counts I and III of her Complaint, Pl.'s Cross-Mot. Summ. J. & Mem. Opp'n Gov't's Mot. Summ. J. ("Pl.'s Cross-Mot.") at 1, ECF No. 40. The cross-motions are now ripe for consideration.

### III.  LEGAL FRAMEWORK

In a typical case, the Court must grant summary judgment to a movant who "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). But in the context of the APA, the Court's review of the administrative record is limited. *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citing *Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs*, No. 01-cv-0273, 2005 WL 691775, at *7 (D.D.C. Mar. 23, 2005)). It is the agency's role to resolve issues of fact and regulate in accordance with those facts. *See Sierra Club*, 459 F. Supp. 2d at 90. The district court's review is accordingly confined to determining whether, as a matter of law, the evidence in the administrative record supports the agency's decision. *Citizens for Resp. & Ethics in Washington v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Undertaking this review, a court has the power to hold unlawful and set aside agency action that the court finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law" or "without observance of procedure required by law." *Id.* § 706(2)(A), (D). The court's review "is highly deferential to the agency," such that "so long as [the agency decision] has some rational basis, the court is bound to uphold the decision." *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 113 (D.D.C. 2010). Thus, "where . . . an agency has set out multiple independent grounds for a decision," the Court "will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable." *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014) (quoting *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003)); *see also, e.g.*, *Doe v. USCIS*, 410 F. Supp. 3d 86, 96 (D.D.C. 2019) ("Because USCIS offered and defended with substantial factual support multiple, independent grounds for denying the visa petitions, USCIS need only show that one of the grounds for denial was sufficient in order to prevail in this matter.").

## IV. ANALYSIS

The Court affirms USCIS's decision based on its "path of funds" requirement, thereby obviating the need to address the parties' arguments about USCIS's denial of Truong's petition due to the lack of documentation regarding the lawfulness of the currency exchanger's funds. From its NOID through the AAO's dismissal of Plaintiff's appeal, USCIS stressed consistently that Truong had failed to provide the necessary documentation proving (1) that Mr. Van Vinh Nguyen was a representative authorized to receive funds on behalf of VNT Trading in Vietnam, (2) what Mr. Nguyen did with the Vietnamese currency funds after receiving them from Plaintiff, and (3) whether VNT Trading in fact received Plaintiff's funds in its business accounts in Vietnam. Admin. R. at 1701–02. Those deficiencies provided USCIS with additional, independent grounds for denying Truong's petition based on her inability to show that the funds

transferred to the NCE escrow account were even her own funds—that is, USCIS pinpointed a problem with Truong's petition that was wholly separate from the issue of whether Plaintiff could show that VNT Trading acquired the assets that it remitted to the NCE through lawful means. But Truong argues that USCIS's alternative ground for denial due to her failure to show the full path of her funds is "unsupported by the regulations, agency precedent, or [her] I-526 petition record." Pl.'s Cross-Mot. at 29. The Court considers each of these arguments in turn.

### A.  USCIS's "Path of Funds" Requirement

First, another court in this District has explained at length why: (1) the plain language of 8 C.F.R. §§ 204.6(e) and 204.6(j)(3) supports USCIS's requirement "that the alien identify the source of the funds, which is demonstrated through documentation evidencing the complete path of the funds," *Borushevskyi v. USCIS*, No. 19-cv-3034, 2023 WL 2663006, at *6 (D.D.C. Mar. 27, 2023), and (2) USCIS's interpretation of the regulations as setting forth such a requirement "is reasonable and is entitled to deference," even if "the regulations could be considered genuinely ambiguous," *id.* at *8; s*ee also Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 17–18 (D.D.C. 2018) ("The AAO's decision correctly states that, under governing regulations and precedent, an applicant must document the complete path of her investment funds."). Agreeing with that court's thorough reasoning, the Court does not see a need to retread that same ground here.

Second, USCIS's precedents and the case law from this District and other federal courts establish that USCIS stands on firm ground in applying its "path of funds" requirement to Truong's petition. Truong contends that USCIS's "insistence that [she] had to reveal the precise manner in which VNT Trading moved funds to the United States extends the 'path of funds' requirement far beyond anything supported in agency precedent." Pl.'s Cross-Mot. at 29. Yet,

10

through two of its "four precedential EB-5 decisions," *id.*, USCIS has long indicated that a petitioner must not only establish that the funds invested are her own, *In re Soffici,* 22 I. & N. Dec. 158, 165 n.3 (BIA 1998), but also document the path of her funds, such as by providing wire transfer records, *In re Izummi*, 22 I. & N. Dec. 169, 195 (BIA 1998). And the agency's adjudications have since reflected this requirement. For instance, in 2014, the agency denied a petitioner's EB-5 application in part because, in failing to document his cash transfer to the broker that then wire transferred funds to the NCE's account, the petitioner had not properly documented the path of his funds or "[met] his burden of establishing that the funds are his own funds." *Matter of [Redacted]*, 2014 WL 4114100, at *5 (AAO May 12, 2014). Although the petitioner had provided "the agreements with the petitioner's broker to transfer funds," this evidence "did not establish that the broker received U.S. currency in cash or *that any received cash actually belonged to the petitioner*." *Id.* (emphasis added). Similarly, the agency in 2016 concluded that another petitioner had not sufficiently documented the path of her funds because, despite submitting evidence showing that 11 individuals were involved in the movement of the petitioner's funds to the NCE, she "did not submit sufficient documentary evidence to establish the transfer of funds from the Petitioner's [IDENTIFYING INFORMATION REDACTED BY AGENCY] account to each of the 11 individuals' accounts." *Matter of C-Y-Appeal of Immigrant Investor Program Office Decision Form I-526, Immigrant Petition By Alien Entrepreneur*, 2016 WL 4619963, at *7–8 (AAO Aug. 19, 2016).

Other courts have also affirmed USCIS's application of its "path of funds" requirement in cases comparable to that here. As Judge Faruqui explained in his Report and Recommendation subsequently adopted in *Borushevskyi*, USCIS's "path of funds" requirement "involves a substantive component and an evidentiary showing—*what* petitioners must prove and *how* they

11

must prove it." 2023 WL 2663006, at *16. "The relevant path includes tracing the funds from 'their point of origin *through any intermediary accounts*.'" *Id.* at *17 (emphasis added) (quoting *Jian Zhang*, No. 18-9799, 2019 WL 5303276, at *7 (C.D. Cal. Oct. 17, 2019)); *see also Zhang*, 2019 WL 5303276, at *7 ("EB-5 investors satisfy their burden under 8 C.F.R. § 204.6(j)(3) to establish that the investment funds are, in fact, their own by sufficiently documenting the transfer path of the investment funds from their point of origin through any intermediary accounts, to their deposit into the new commercial enterprise's custody or escrow account."). The petitioner must "submit sufficient evidence to prove the complete path of their EB-5 investment funds," which, "[u]nder USCIS precedent, . . . requires objective documentation tracing the transfer of funds." *Borushevskyi*, 2023 WL 2663006, at *17.

Consistent with these considerations, another court in this District concluded that it was not arbitrary and capricious for the agency to deny a plaintiff's visa application for failing to document the complete path of her investment funds. *Sadeghzadeh*, 322 F. Supp. 3d at 18. The plaintiff in that case had not provided records showing "how the funds made their way from her bank account in Iran to the wiring companies in Dubai" that purportedly transferred the plaintiff's investment to the NCE. *Id.* The court affirmed that the AAO was "well within its discretion to demand evidence to fill that evidentiary gap," and found that the agency had met its obligation by making clear that, "having failed to provide *any* corroborating proof of the movement of funds to Dubai or information concerning the identities of the wiring companies, [the plaintiff] had not met her evidentiary burden." *Id.* (emphasis in original).

In another case analogous to that here, a court found that USCIS's denial of a plaintiff's EB-5 petition was not arbitrary and capricious or unsupported by substantial evidence when the agency concluded that, among other issues presented by the plaintiff's petition, she had not

12

demonstrated the complete path of her funds through a third-party individual. *See Binbin Lei v. USCIS*, No. 15-cv-9654, 2017 WL 5957641, at *5 (C.D. Cal. Mar. 23, 2017), *aff'd*, 740 F. App'x 578 (9th Cir. 2018). The plaintiff in *Lei* had submitted declarations from herself and the third party, Mingdong Cai, "asserting that Cai helped plaintiff transfer her $535,000 capital investment" and "stat[ing] that plaintiff made three transactions from her China Merchants Bank ("CMB") account to Cai's China Industrial and Commerce Bank ("CICB") account, and that Cai then made one transfer from his Hong Kong and Shanghai Banking Corporation ("HSBC") account to plaintiff's Bank of China ("BC") account." *Id.* The AAO found, however, that

> there [was] no documentary evidence to support the assertions regarding the transfer of funds from [plaintiff]'s CMB account to Mr. Cai's CICB account; the transfer of funds from Mr. Cai's CICB account to his HSBC account; and the transfer of funds from Mr. Cai's HSBC account to [plaintiff]'s BC account.

*Id.* The AAO thus stated that the plaintiff had not shown the complete path of her funds and could not meet the burden of establishing that the funds transferred for her capital investment were her own funds. *Id.* On review, the court confirmed that "[t]he AAO was within its rights to consider whether plaintiff had established that the invested funds were her own," and that the plaintiff had accordingly failed to show that the agency's action was arbitrary and capricious. *Id.* at *6 (citing *Soffici,* 22 I. & N. Dec. at 165 n.3).

Truong objects that cases such as *Sadeghzadeh* and *Borushevskyi* should be of little relevance here because "none involved currency exchanges" and instead "all concerned run-of-the-mill factual issues about how the *EB-5 investor* acquired the assets used to make the qualifying investment, or whether the funds transferred to the U.S. business were even owned by the investor at all." Pl.'s Cross-Mot. at 30 (emphasis in original). But Truong's case does pose such "run-of-the-mill factual issues" because, in the agency's judgment, she provided inadequate documentation showing "whether the funds transferred to the U.S. business were even owned by

[her] at all." *Id.* And even though a case such as *Lei* did not involve a third party explicitly identified as a currency exchanger, it nevertheless illustrates that the agency has consistently considered its "path of funds" requirement to include documenting how third parties involved in the movement of funds received those funds from the EB-5 petitioner. In short, the cases that the Court cites here are relevant not because they turn on issues related to whether the EB-5 petitioner was able to establish the lawful source of her funds, but because they illustrate that the agency was not venturing outside its usual practice when it questioned whether Truong was able to demonstrate the path of her funds from her withdrawal from her bank account in Vietnam to the deposit of funds into the NCE escrow account. *See, e.g.*, *Lei*, 2017 WL 5957641, at *5 n.5 (distinguishing a petitioner's obligation to show the lawful source of her investment funds from her separate obligation to show the complete path of her funds).

### B. Substantial Evidence

Thus, the question that this Court must answer is whether Truong has established that the agency's denial of her petition in the face of the documentation that she provided was unsupported by substantial evidence.[2] Under a substantial-evidence standard, the Court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Borushevskyi*, 2023 WL 2663006, at *9 (quoting *Biestek v.*

---

[2] As the D.C. Circuit has explained, "the distinction between the substantial evidence test and the arbitrary or capricious test is largely semantic." *Doe v. USCIS*, 410 F. Supp. 3d 86, 96 (D.D.C. 2019) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984)) (internal quotation marks omitted); *see also Black Rock City LLC v. Haaland*, No. 19-cv-3729, 2022 WL 834070, at *5 n.3 (D.D.C. Mar. 21, 2022), *appeal dismissed per appellant's motion for voluntary dismissal*, No. 22-5148, 2022 WL 17586715 (D.C. Cir. Dec. 12, 2022) ("There is 'no material difference between the APA's arbitrary and capricious standard and its substantial evidence standard as applied to court review of agency factfinding.'" (quoting *Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016)) (internal quotation marks omitted)).

*Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (cleaned up).  This review "is highly deferential to the agency fact-finder," *Sec'y of Lab. v. Knight Hawk Coal, LLC*, 991 F.3d 1297, 1308 (D.C. Cir. 2021) (quoting *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008)), such that a court "may not reject reasonable findings and conclusions, even if [it] would have weighed the evidence differently," *id.* (quoting *Cumberland Coal Res., LP v. Fed. Mine Safety & Health Rev. Comm'n*, 717 F.3d 1020, 1028 (D.C. Cir. 2013)).  Instead, a court "must affirm the decision if 'a theoretical reasonable factfinder could have reached the conclusions actually reached by the [agency].'"  *Borushevskyi*, 2023 WL 2663006, at *9 (quoting *Sec'y of Lab. v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1104 (D.C. Cir. 1998)) (internal quotations omitted).  "Reversal of an agency decision under [the substantial-evidence] standard is rare."  *Rossello*, 529 F.3d at 1185.

Truong believes that she provided sufficient evidence because her documentation purportedly showed "(1) that she provided a third-party currency exchanger with the full amount of lawfully sourced capital, and (2) that the exchanger transferred the equivalent amount of funds in U.S. dollars to Plaintiff's EB-5 qualifying business in the United States."  Pl.'s Cross-Mot. at 31.  She acknowledges that "the agency faulted VNT Trading's representative for providing inconsistent information regarding the names and licenses for the corporate entities affiliated with VNT Trading in Vietnam," but argues that "the bottom line remains that the Government has identified nothing *unlawful* about Ms. Truong's conduct in arranging the currency swap with VNT Trading."  *Id.* at 30 (emphasis in original).  In the agency's judgment, however, Truong failed to trace by a preponderance of the evidence the path of funds used in the currency exchange because: (1) Truong relied solely on Peggy Nguyen's representations that a representative of VNT Trading, Van Vinh Nguyen, collected the funds from Truong on VNT

Trading's behalf, but did not otherwise provide any other documentation confirming that Mr. Nguyen was indeed "employed by VNT Trading or authorized to receive funds on the company's behalf, or explaining what he did with [Plaintiff's] funds;" and (2) Truong did not "provide any documents such as bank statements to confirm VNT Trading actually received the VND funds in its business accounts in Vietnam."  Admin. R. at 1701.  According to the agency, other inconsistencies in documentation provided by Ms. Nguyen relating to the currency exchanger's business certificate cast "[d]oubt" and adversely affected the agency's consideration of Ms. Nguyen's other representations as an "individual whose testimony regarding the transfer of funds play[ed] a key role in establishing the path of [Plaintiff's] funds."  *Id.*

Upon consideration of the administrative record, the Court concludes that USCIS's decision in this case meets the substantial-evidence standard that "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."  *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (quoting *Fla. Mun. Power Agency v. Fed. Energy Regul. Comm'n*, 315 F.3d 362, 365–66 (D.C. Cir. 2003)).

> When an agency bases its decision on the petitioner's failure to meet the necessary burden, *i.e.*, on a general lack of evidence rather than on a particular piece of evidence, there need not be affirmative contradictory evidence on the record—a rational, supported explanation of the lack of evidence suffices to meet the substantial evidence test.

*Borushevskyi*, 2023 WL 2663006, at *15.  "[I]t [is] not arbitrary, capricious, or an abuse of discretion for USCIS to conclude that [a petitioner] simply ha[s] not met [their] burden."  *Id.* (quoting *Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 69 (D.D.C. 2019)).  USCIS has provided just such a "rational, supported explanation" here in finding that Truong did not provide the necessary documentation tracing the path of her funds and that the documentation she did provide relied on representations by an individual whose credibility the agency reasonably doubted due to other inconsistencies in the record.  *See id.*; Admin. R. at 1701.

16

The Court therefore finds that these grounds for denial of Truong's petition provides sufficient basis for the Court to uphold the agency's decision.  *See Fogo De Chao*, 769 F.3d at 1149.  Because the Court upholds the agency's decision on these other independent grounds, the Court need not address the parties' arguments regarding USCIS's examination of the lawfulness of third-party currency exchangers' funds.  For the same reason, even though Truong sought to reserve her motion for summary judgment on Count II of her Complaint until after any potential discovery, the Court grants Defendants' Motion for Summary Judgment on all three counts of the Complaint.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 37) and **DENIES** Plaintiff's Cross-Motion for Summary Judgment (ECF No. 39).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 28, 2023                                                                               RUDOLPH CONTRERAS
                                                                                                                    United States District Judge